IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

CYNTHIA E. RICHARDSON,

       Plaintiff,

vs.                          CASE NO. 1:15-cv-257-WTH-GRJ

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,[1]

       Defendant.

_____/

## **REPORT AND RECOMMENDATION**

Plaintiff appeals to this Court from a final decision of the Acting

Commissioner of Social Security (the "Commissioner") denying Plaintiff's

application for Disability Insurance Benefits ("SSDI") and Supplemental

Security Income ("SSI") pursuant to Title II and Title XVI of the Social

Security Act ("the Act"). (ECF No. 1.) The Commissioner has answered,

ECF No. 9, and both parties have filed briefs outlining their respective

positions. (ECF Nos. 16, 17.) For the reasons discussed below, it is

recommended that the Commissioner's decision be affirmed.

_____

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Accordingly, pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill should be substituted for former Acting Commissioner of Social Security, Carolyn W. Colvin, as Defendant in this matter. The Clerk is directed to correct the docket accordingly.

# I.  PROCEDURAL HISTORY

Plaintiff protectively filed her Title II and Title XVI applications on January 27, 2012, alleging a disability onset date of February 15, 2009. (R. 71–86, 209–16, 223.) Plaintiff originally alleged that she could no longer work due to arthritis, high blood pressure, poor vision, and an irregular heartbeat. (R. 71.) She added claims of periodic blackouts at the reconsideration level. (R. 13, 251.) Her application was denied initially and upon reconsideration. (R. 118–119, 124–125, 143.) At the hearing level, she added allegations of severe migraine headaches. (R. 13, 262.) Following a hearing on February 19, 2014, an administrative law judge ("ALJ") issued a decision unfavorable to Plaintiff. (R. 8–20.) The Appeals Council denied Plaintiff's request for review. (R. 1–4.) On November 20, 2015, Plaintiff filed the instant appeal. (ECF No. 1.)

# II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g) (2000). Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the

conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen,* 793 F.2d 1177 (11th Cir. 1986) (finding that the court must also consider evidence detracting from evidence on which the Commissioner relied). However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the

Commissioner properly applied the law. *Keeton v. Dep't Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505 (2005).[2] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505–404.1511.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental

_____

[2] All further references to 20 C.F.R. will be to the 2005 version, unless otherwise specified.

ability to do basic work activities, then he does not have a severe

impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a

claimant's impairments meet or equal an impairment listed in 20 C.F.R.

Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d).

Fourth, if a claimant's impairments do not prevent him from doing past

relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a

claimant's impairments (considering his residual functional capacity

("RFC"), age, education, and past work) prevent him from doing other work

that exists in the national economy, then he is disabled. 20 C.F.R. §

404.1520(f).

The burden of proof regarding the plaintiff's inability to perform past

relevant work initially lies with the plaintiff. *Walker v. Bowen*, 826 F.2d 996,

1002 (11th Cir. 1987); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278

(11th Cir. 2001). The burden then temporarily shifts to the Commissioner to

demonstrate that "other work" which the claimant can perform currently

exists in the national economy. *Doughty*, 245 F.3d at 1278 n.2.[3] The

---

[3] In *Doughty* the court explained this burden shifting as follows:

> In practice, the burden temporarily shifts at step five to the
> Commissioner. The Commissioner must produce evidence that
> there is other work available in significant numbers in the

Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled. *Walker*, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

## III.  SUMMARY OF THE RECORD

## A.  Medical Evidence

Plaintiff had complaints of hypertension and headaches in March and April 2008. Her diagnosis included headaches associated with vascular abnormality, migraine tension headache, paroxysmal supraventricular tachycadias, and hypertension. A slow pathway ablation was performed for AV node re-entrant tachycardia. Her physical exams, however, revealed normal cardiovascular, musculoskeletal, and neurologic findings. (R. 377–88.)

In February of 2009, she complained of left shoulder pain. The

national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.

*Id.* (internal citations omitted).

associated symptoms included decreased range of motion, pain, and tenderness. Although Plaintiff had left partial tear syndrome, left rotator cuff infraspin tendonitis, her physical exam revealed full range of motion and her x-ray did not reveal any acute abnormality. An injection therapy procedure was performed, which resulted in pain relief. (R. 373–76, 413, 422–23.)

On January 9, 2012, Plaintiff was admitted to Shands at the University of Florida. Her physical exam during this visit yielded all normal findings, including normal cardiovascular, musculoskeletal, and neurological exams. She only presented with the skin rash and complaints of back pain. Her diagnosis was shingles (herpes zoster). (R. 287–300.)

Plaintiff returned to Shands on January 16, 2012, stating that her pain was worse. Plaintiff also had high blood pressure during this visit, and an EKG was performed. She returned to Shands at the UF Eastside Clinic later in January, where her diagnosis included unspecified essential hypertension and post herpetic neuralgia.   (R. 301–26, 470–73.)

Then, in February 2012, Plaintiff returned to Shands, this time complaining of headaches and stating that she blacked out several times in the past month. She had normal cardiovascular and musculoskeletal

exams. She also had a CT scan of her head, which revealed changes of

demyelination in the centrum semiovale and correlate for hypertension or

vasculopathy. Her diagnoses were tension headaches/migraines, syncope,

post herpetic neuralgia, and visual blurring. (R. 333–50, 457–62.)

In March 2012, Plaintiff visited University of Florida Physicians. She

had probable temporal arteritis and was prescribed prednisone. Although

Plaintiff complained of a severe headache at the start of March, the

prednisone afforded Plaintiff some relief from her headaches. Her left

temporal artery was tender to palpation, and her blood pressure was

elevated, but her results were otherwise normal throughout the month.

Plaintiff had no complaints apart from head pain. (R. 351–72, 441–43.)

Dr. Adhami evaluated Plaintiff in April 2012. Plaintiff complained of

headaches, blackouts, and arthritis and tendonitis in her right arm and

shoulder. Plaintiff also stated that she was diagnosed with a brain mass in

2010. Plaintiff's physical exam revealed occasional irregular heart beats,

but her muscle strength was 5/5 in all muscles and her joints were free in

movement. Additionally, although Plaintiff had mild pain in her right

shoulder, she had a full range of motion. Her diagnosis included arthritis in

the right shoulder requiring physical therapy and hypertension. (R.

427–28.)

In April and May 2012, Plaintiff visited the neurology clinic at University of Florida for followup regarding her temporal arteritis. She did not complain of any recent headaches during her May visit, but she complained of pain at her April visit. She also stated that she experienced pain from a zoster outbreak. Her physical exams yielded a tender artery palpable over her left temple, but her findings were otherwise normal. (R. 437–39, 449–52.)

Plaintiff returned to University of Florida Physicians to address her temporal arteritis and hypertension in July 2012. Plaintiff also complained of severe headaches. Plaintiff, however, had not been following her doctor's recommendations regarding prescriptions and necessary lab work, which concerned her doctors during one visit. During that visit, the doctor noted that Plaintiff's judgment appeared impaired, but it was intact during other visits. Her motor strength was 5/5, and her heart sounds, gait, and stance were normal. The doctors also noted that Plaintiff had not recently used cocaine but that she does occasionally smoke marijuana. (R. 433–36.)

In April 2013, Plaintiff visited North Florida Regional Medical Center.

She had mild cardiomegaly without radiographic evidence of acute cardiopulmonary disease. At this time, Plaintiff denied having any headache, although she did complain of a cough and chest pain. Her EKG was abnormal, likely multifocal atrial tachycardia. Her differential diagnosis included pneumonia, sinusitis, and UTI. Her diagnosis also included multifocal atrial tachycardia, hypokalemia, hypomagnesemia, and hypertension. (R. 475–519.)

In September 2013, when Plaintiff visited the Alachua County Health Department, she complained of bumps on her body and pain in her right hand. Her physical exam revealed an irregular heart rhythm and tenderness in her right hand, as well as limited movement with pain. Her muscle strength, however, was 5/5 in all extremities. Her diagnosis included hand joint pain, UTI, benign essential hypertension, and asymptomatic HIV.  (R. 556–62.)

In November 2013 through January 2014, Plaintiff visited the Alachua Health Department for asymptomatic HIV followup. Plaintiff denied pain, any irregular heartbeat, and dizziness. Plaintiff also denied headaches as well as any musculoskeletal pain and muscle or joint problems. Her physical exam yielded all normal findings, although at one appointment she

did have an irregular heart rhythm and abnormal EKG. Her doctors noted

that her labs were improving with treatment. Plaintiff originally complained

of side effects, including nausea, due to her medications, but then she later

did not have any complaints or side effects with her current treatment. (R.

538–55.)

## B.  Opinion Evidence

### 1. Dr. Henry

In May 2012, Dr. Lionel Henry reviewed Plaintiff's records and

concluded that Plaintiff had RFC for medium work at the reconsideration

level. He determined that Plaintiff could occasionally lift and carry 50

pounds, frequently lift and carry 25 pounds, and stand, sit, and walk for

about six hours in an eight-hour workday. Dr. Henry also stated that

Plaintiff had the postural limitation of climbing ladders, ropes, and scaffolds

only frequently. Plaintiff should also avoid concentrated exposure to

extreme cold and extreme heat as well as hazards such as machinery and

heights. Accordingly, Dr. Henry opined that Plaintiff's limitations would not

prevent her from performing past relevant work as a housekeeper. (R.

97–99.)

### 2. Dr. Greenberg

In September 2013, Dr. Robert Greenberg performed a consultative examination on Plaintiff. On his medical source statement, he wrote that Plaintiff could never lift or carry any weight. As an explanation, he noted a decreased range of motion for Plaintiff's right shoulder and decreased grip and arm strength for the right arm and hand. He also noted that Plaintiff could only sit, stand, and walk for five hours in an eight-hour workday. Further, he indicated that Plaintiff can never use her right hand except for fingering and feeling occasionally. She can use her left hand frequently for all activities. (R. 520–21.)

As for the use of Plaintiff's feet, Dr. Greenberg stated that she could only frequently operate foot controls with both feet, but he stated that she had no impairment of the legs. Plaintiff can also never climb ladders or scaffolds, and she can only occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl.(R. 522–23.)

Dr. Greenberg found Plaintiff's environmental limitations are as follows. She can never tolerate exposure to unprotected heights, moving mechanical parts, or operating a motor vehicle. She can occasionally tolerate exposure to humidity, wetness, dust, odors, fumes, pulmonary

irritants, extreme cold, extreme heat, and vibrations. Additionally, she can only tolerate moderate noise. As an explanation for these findings, Dr. Greenberg noted Plaintiff's history of headaches and blackouts. (R. 523–24.)

Plaintiff's physical exam yielded normal cardiovascular results, including no visible precordial pulsations or heaves, regular rhythm, and a normal heart rate. Plaintiff also had decreased range of motion of the right shoulder, although she had full range of motion for all other extremities. Dr. Greenberg also noted a decreased right grip strength of 4/5, but it was 5/5 on the left. Additionally, Plaintiff's range of motion report stated that her range of motion was normal for everything except for her right and left shoulders. All other findings were normal. (R. 526–31.)

The diagnosis included HIV positive, left temporal arteritis, and osteoarthritis of the right shoulder, arm, and hand. Dr. Greenberg opined that Plaintiff "would be unable to perform work-related activities that required heavy lifting or repetitive use of the right arm." (R. 531.)

Dr. Greenberg later adjusted his findings to state that Plaintiff could frequently lift up to 100 pounds with her left arm and carry up to 10 pounds frequently and up to 100 pounds occasionally with her left arm, but she

could never lift or carry anything with her right arm. (R. 532.)

## C.  Hearing Testimony

At the hearing on February 19, 2014, Plaintiff was 59 years old. The ALJ first asked Plaintiff about why she does not have a driver's license. She originally stated that it was because she doesn't need one, but then she stated that it is because she cannot drive due to right arm pain and because she has difficulty seeing. Plaintiff stated that she has arthritis in her right arm, which led to her seeing a doctor for the tendons in her arm when she worked at the motel. (R. 30–31.)

Next, the ALJ questioned Dr. Clark, an internist and medical expert. Dr. Clark testified that as of January 9, 2012, Plaintiff has had some medically determinable impairments. Dr. Clark noted a history of heart surgery in 2008. Then in April 2013, although Plaintiff complained of body aches, her physical examination was not particularly remarkable. He testified that she was found HIV positive in 2013. Dr. Clark noted that the only symptom Plaintiff complained about regarding her HIV was fatigue. Although Plaintiff stated that she had no history of drug abuse, she had used cocaine and marijuana in 2012. (R. 32–35.)

Dr. Clark stated that in September 2013, Plaintiff complained of

severe pain throughout her right arm and shoulder, although she did not recall injuring it. At that time, however, her physical examination revealed that all her joints move well except for her left shoulder. Further, Dr. Clark stated that there was no orthopedic, neurologic, or musculoskeletal explanation for her right hand pain. Dr. Clark opined that Plaintiff merely had a sore shoulder for one month, and nothing evidenced that there was anything to suggest that any shoulder problem would last more than 12 months. There was no anatomical explanation for Plaintiff's previous left shoulder pain or the right shoulder plain she now complains of. (R. 34–37, 40.)

Dr. Clark also offered his opinion as to Dr. Greenberg's findings. He stated that he believed Dr. Greenberg based his opinion solely on Plaintiff's complaints that she could not use her right arm. Dr. Clark could not find any other reason for Dr. Greenberg's findings in the records or in Dr. Greenberg's examination. (R. 39.)

Dr. Clark stated that he believed Plaintiff could return to work. He testified that Plaintiff has never had any trouble standing or walking and that her back and legs are normal. He also testified that Plaintiff could lift 10 or 20 pounds left-handed and that she could lift 50 pounds left-handed

occasionally. (R. 41–42.)

Plaintiff's attorney then proceeded to ask Plaintiff some questions. Plaintiff testified that she is on Amlodipine, Metoprolol, and hydrochloride for blood pressure. Plaintiff is also on prenatal pills to ensure she has enough protein and Stribild due to her HIV. Plaintiff stated that Striblid causes her heart to beat quickly and makes her tired.  (R. 43.)

Plaintiff then testified as to some of her daily activities and work history. Plaintiff stated that she has to walk up 13 flights of stairs where she lives but that her heart is racing by the time she gets to the top of the stairs. She also walks for about fifteen minutes a day, and she tries to clean up around the house but her heart beats too fast, which makes her dizzy.[4] The only cooking she does is putting food in the microwave. Plaintiff also testified that she tried to go back to work doing laundry at a motel in 2013 for 20 hours a week, but she was fired because she kept passing out on the job. She also stated that she could not fold things because of her right arm. She managed to work, however, for six months. (R. 43–46.)

When her attorney questioned Plaintiff about whether she could lift 50 pounds, she stated that she could not lift 50 pounds due to her right

---

[4] One doctor stated that this could be due to side effects of Stribild. (R. 45.)

arm. She said that if she tries to lift that much weight, she gets weak and her arm hurts very badly. (R. 45.)

Robert Lustney, a vocational expert ("VE") also testified. Plaintiff stated that her work history of doing laundry at motels consisted of both lifting as much as 50 pounds and using big machines as well as only lifting 20 pounds. The VE suggested Plaintiff's work qualified under DOT 323.687-014, cleaner, housekeeper, which is light work with an SVP of 2, and DOT 361.684.014, laundry worker, which is medium work with an SVP of 2. The VE also speculated that in the industry, about 35 percent of laundry jobs are light work and the rest are medium. (R. 48–57.)

## D.  The ALJ's Findings

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, February 15, 2009.[5] The ALJ found that Plaintiff had the severe impairments of hypertension; herpes zoster with some post herpetic neuralgia; and as of September 2013 asymptomatic HIV. At step three of the sequential evaluation, the ALJ found that Plaintiff did not have an impairment or combination of

---

[5] Although Plaintiff worked between February 14, 2013, and August 2013—after the alleged disability onset date—this work did not rise to the level of substantial gainful activity. (R. 10.)

impairments that met or medically equaled one of the listed impairments.

(R. 10–12.)

With respect to Plaintiff's residual functional capacity ("RFC") at step

four of the sequential evaluation, the ALJ determined that Plaintiff retained

the RFC to perform the full range of light work. (R. 12.)

Despite Plaintiff's complaints at the hearing level, the ALJ concluded

that Plaintiff's medically determinable impairments could reasonably be

expected to cause Plaintiff's alleged symptoms but that Plaintiff's

statements concerning the intensity, persistence, and limiting effects of his

symptoms were not entirely credible. Specifically—in discrediting Plaintiff's

credibility—the ALJ noted Plaintiff's failure to consistently complain to

physicians of the same severity of disabling symptoms she testified to at

the hearing; Plaintiff's testimony regarding her daily activities and work

activities, which is inconsistent with her complaints; a lack of abnormal

clinical signs and laboratory findings in the record that match Plaintiff's

complaints; the presence of several normal clinical findings in the record,

including mood, affect, thought process, insight, judgment, and

musculoskeletal and neurological examinations; documentation of only

routine and conservative treatment; and the well supported medical

opinions of Dr. Clark and Dr. Henry. (R. 13–14.)

The ALJ then discussed the lack of credibility of each of Plaintiff's allegations. To start, he addressed Plaintiff's complaints of fatigue, shortness of breath, rapid heartbeat, headaches, and blackouts. As for these symptoms, Plaintiff failed to consistently complain about these to her doctors. Notably, Plaintiff even denied experiencing shortness of breath or rapid heartbeat. And Plaintiff's complaints of fatigue were only consistent beginning in September 2013, and she only complained of blackouts briefly. (R. 14.)

The ALJ also found that Plaintiff's complaints regarding these symptoms were not credible based on her daily activities as well as a lack of clinical and diagnostic abnormalities—namely, her only significant diagnosis was her August 2013 diagnosis with HIV, but she "repeatedly presented in no apparent distress with essentially normal cardiac, respiratory, musculoskeletal, neurological, and mental status examinations." Following her HIV diagnosis, she was prescribed medication that improved her condition. Additionally, after September 2013, Plaintiff presented with no gross motor dysfunction and no apparent distress, and she had full 5/5 muscle strength in all extremities.

*Case No. 1:15-cv-257-WTH-GRJ*

Accordingly, the ALJ found no reason to limit Plaintiff beyond the full range of light work and lifting and carrying no more than 20 pounds occasionally and 10 pounds frequently.  (R. 14–15.)

The ALJ then addressed Plaintiff's complaints of shoulder pain. The ALJ noted that Plaintiff complained of shoulder pain only in September 2013 and not after. Further, the ALJ noted that Plaintiff even denied experiencing musculoskeletal pain in November 2013 and January 2014. Additionally, nothing in the record supports Plaintiff's subjective complaints of shoulder pain. Next, the ALJ discussed Plaintiff's complaints of side effects from her medication. Because Plaintiff did not consistently complain of side effects or of blackouts, the ALJ found that her complaints were not sufficiently credible to warrant any additional restrictions. (R. 15.)

The ALJ then addressed in detail why he gave the opinion evidence the weight he did. The ALJ found that the opinions of Dr. Clark and Dr. Henry were mutually supporting and well supported by the objective medical evidence in the record. Accordingly, the ALJ accorded those opinions substantial weight. (R. 18.)

The ALJ found, however, that Dr. Greenberg's opinion was not well supported by the objective medical evidence or the record as a whole. The

ALJ noted that his opinion was actually contradicted by Plaintiff's own statements regarding her ability to function, by an absence of any musculoskeletal abnormalities and instead the presence of normal musculoskeletal and neurological examinations, and by the opinions of Dr. Clark and Dr. Henry. Further, the ALJ took issue with the fact that Dr. Greenberg's opinion appears to be purely conclusory, lacking in explanation and rationale. Because the ALJ found that Dr. Greenberg based his opinion on the subjective complaints of Plaintiff, which the ALJ found not credible for the reasons mentioned above, the ALJ concluded that Dr. Greenberg's opinion was entitled to no significant weight. (R. 18.)

The ALJ determined at step four that Plaintiff is capable of performing her past relevant work as a housekeeping cleaner. The VE testified that Plaintiff's past relevant work as a motel housekeeper was a hybrid of the DOT's housekeeping cleaner and laundry worker. Plaintiff testified that she had performed work represented by each of those titles for substantial periods of time between 1994 and 2009. Because a housekeeping cleaner only required unskilled work at the light exertional level, Plaintiff was capable of this work because the ALJ determined that Plaintiff has an RFC for a full range of light work. Accordingly, the ALJ concluded that Plaintiff has not been under a disability from February 15,

2009, through the date of the ALJ's decision. (R. 19.)

## IV.  DISCUSSION

Plaintiff raises one argument on appeal: the ALJ did not properly credit the opinion of Dr. Greenberg—a consultative examiner—which Plaintiff alleges is an uncontradicted opinion that the ALJ should not have rejected. (ECF No. 16 at 11–15.)

**The ALJ's decision to accord Dr. Greenberg's opinion no significant weight was not improper as the ALJ's decision was based on substantial evidence in the record and was clearly explained.**

Plaintiff argues that the ALJ rejected the uncontradicted opinion evidence of Dr. Greenberg, a consultative examiner, which severely limited Plaintiff's right shoulder use. (ECF No. 16 at 11–15.) Further, Plaintiff asserts that based on the limitations noted in Dr. Greenberg's opinion, Plaintiff is incapable of performing her past relevant work. (*Id.* at 15.)

The ALJ has the responsibility of determining a Plaintiff's RFC; it is not a medical assessment. *See* 20 C.F.R. §§ 416.946(c), 416.927(d)(2); *see also Cooper v. Astrue*, 373 F App'x 961, 962 (11th Cir. 2010) (noting that "[t]he task of determining a claimant's ability to work is within the province of the ALJ, not a doctor"). Accordingly, the ALJ does not need an examining physician's opinion regarding Plaintiff's RFC before making his own assessment of Plaintiff's RFC. Instead, the ALJ can make this

determination based upon a review of the medical and other evidence, including the opinions of Dr. Greenberg, Dr. Henry, and Dr. Clark, the medical expert who testified at Plaintiff's hearing.

Additionally, if an examining physician opines about Plaintiff's RFC, the ALJ can still determine that Plaintiff possesses a different RFC, particularly where—as in this case—the record does not support the examining physician's opinion. *See Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (nothing that "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion" (quoting *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981))).

The ALJ properly made a determination of Plaintiff's RFC, taking into account medical evidence in the record as well as the opinion evidence from Dr. Greenberg, Dr. Henry, and Dr. Clark, crediting these opinions as the ALJ determined was consistent with the medical evidence. Additionally, the ALJ provided adequate reasons for his RFC determination, including support from the record and reasons for discrediting both Plaintiff's subjective statements and the opinion of Dr. Greenberg.

Specifically, Plaintiff argues that the opinion of Dr. Greenberg, a consultative examiner, states that Plaintiff's limitations regarding the use of her right shoulder are more restrictive than those that the ALJ determined.

Because Plaintiff alleges that Dr. Greenberg was the only examining physician to opine about Plaintiff's range of motion, Plaintiff argues that substantial evidence does not support the ALJ's determination that Plaintiff is capable of the full range of light work. The Court finds, however, that Dr. Greenberg's opinion is conclusory and not supported by the record as a whole.

The ALJ's decision to discount Dr. Greenberg's opinion was supported by substantial evidence because substantial evidence contradicts Dr. Greenberg's opinion. To start, Dr. Greenberg's opinion limits Plaintiff's ability to sit, stand, and walk to three hours at a time and five hours total in an eight-hour workday, despite finding no impairments in her legs. (R. 521.) Additionally, his opinion severely limits the use of Plaintiff's hands, arms—she can almost never use her right arm to lift and carry and is limited in her use of her left arm—and feet as well as postural activities. (R. 520–23, 532.) Despite this opinion, Plaintiff's testimony at the hearing included that she was able to work for 20 hours a week in a motel laundry between February and August 2013, which goes against any finding that she was completely restricted in using her right arm. She also stated that she was able to climb 13 flights of stairs before needing to stop due to shortness of breath. (R. 43, 47.)

In addition to Plaintiff's testimony, the medical records and Dr. Greenberg's examination also contradict his opinion. As for the record, the ALJ found that there was a complete lack of any musculoskeletal abnormalities of Plaintiff's spine and lower extremities. Additionally, Plaintiff had several normal musculoskeletal and neurological examinations, (R. 290, 337, 380, 385, 391, 407, 451, 455, 489, 501), and denied having musculoskeletal problems on multiple occasions. (R. 390, 399, 405, 442, 447, 450, 454, 458, 471.) As for Dr. Greenberg's examination, Plaintiff had a full range of motion of all finger joints, and her right arm and grip strength were only slightly diminished at 4/5. (R. 527, 530–31.) Also, although Plaintiff's right shoulder had a diminished range of motion, her left shoulder had a full range of motion. (R. 528.) Such findings do not support the significant limitations of Dr. Greenberg's opinion.

Then, specifically contradicting Dr. Greenberg's findings regarding Plaintiff's right shoulder and arm use—which is Plaintiff's sole focus in this appeal—the ALJ further noted that although Plaintiff complained of severe right shoulder and arm pain in September 2013, the record does not reveal that Plaintiff consistently complained of this pain. Additionally, despite Plaintiff's short-lived complaints of pain, her consultative examination in September 2013 revealed only minor abnormalities of decreased range of

motion and decreased strength. (R. 520–31.) Days after that exam, she

had normal strength in all four extremities. (R. 556–62.) Then, by

November 2013 and through January 2014, Plaintiff denied any

musculoskeletal pain.[6] (R. 538–55.) Thus, the evidence does not support

Dr. Greenberg's finding that Plaintiff could essentially never use her right

arm or hand[7]—a finding he only explained with a statement that Plaintiff

had a decreased range of motion in her right shoulder and decreased right

grip and arm strength. (R. 532.)

Dr. Clark's opinion, however, was supported by the objective medical

evidence, and therefore the ALJ accorded it substantial weight. This

opinion, unlike Dr. Greenberg's, was that Plaintiff had no significant or

severely limiting medically determinable impairment. Although Dr. Clark

acknowledged Plaintiff's month-long complaint of shoulder soreness in

September 2013, he noted the significant work activity Plaintiff performed

---

[6] These findings discount Dr. Greenberg's opinion that Plaintiff's limitations would last for twelve consecutive months because within two months of Plaintiff's consultative examination, she denied musculoskeletal pain.

[7] Dr. Greenberg originally noted that Plaintiff could not lift any weight. (R. 520.) He also concluded, however, that Plaintiff "would be unable to perform work-related activities that require heavy lifting or repetitive use of the right arm." (R. 531.) He then amended his opinion to indicate that although Plaintiff could not lift any weight with her right arm, she could lift some weight with her left arm. (R. 532.) But this adjustment was without explanation, so the only justification for limiting Plaintiff's use of the left arm was still the limitations Dr. Greenberg found in the right arm.

between February and August 2013. Further, Dr. Clark opined that based on the record the pain could have resolved shortly after her consultative examination, with no subsequent limitations. In other words, the record revealed nothing but transient shoulder soreness. (R. 32–42.)

Additionally, despite Dr. Greenberg's limitations on Plaintiff's ability to sit, stand, walk, and use her left arm and hand, Dr. Clark noted that nothing in the record supports any such limitations. Accordingly, Dr. Clark testified that Plaintiff could lift objects weighing 20 pounds occasionally and 10 pounds frequently using only her left hand, and that she could also lift objects weighing 50 pounds occasionally and objects weighing 25 pounds frequently. All in all, Dr. Clark found that there was no anatomical explanation for Plaintiff's shoulder pain and no justification for Dr. Greenberg's limitations.[8] (R. 32–42.)

The ALJ, along with Dr. Clark, determined that Dr. Greenberg's opinion was not supported by the record and that Dr. Greenberg's opinion was at least partially based on Plaintiff's subjective complaints. Where an

---

[8] Plaintiff submitted some evidence after the hearing, which Dr. Clark did not consider in formulating his opinion. In that evidence, there was one complaint regarding pain in Plaintiff's right hand; however, her physical examination revealed 5/5 muscle strength. None of the rest of the evidence contained any complaints regarding Plaintiff's upper extremities, and she even denied experiencing musculoskeletal pain.  (R. 539, 547.)

opinion is "based primarily on the claimant's subjective complaints of pain," the ALJ may discount the opinion. *Freeman v. Barnhart*, 220 F. App'x 957, 960 (11th Cir. 2007). The fact that Dr. Greenberg's opinion offers very little explanation for his findings and the fact that those findings are unsupported by the record as a whole evinces his reliance on subjective complaints, although it is unclear how much Dr. Greenberg relied on these subjective complaints in comparison to the medical records. Further, the ALJ found that Plaintiff's subjective complaints were not entirely credible, making any reliance on them even more questionable. Thus, for these reasons and the many others stated in the ALJ's opinion, the ALJ was justified in reaching a conclusion different from Dr. Greenberg's opinion.

Although the ALJ determined that the limitations stated by Dr. Greenberg were not supported by the record and afforded his opinion no significant weight, the ALJ determined that Dr. Clark, a non-examining medical expert, offered a well-supported opinion at the hearing. Where the ALJ determines that a non-examining physician's opinion is more strongly corroborated by the record, the ALJ may rely on a non-examining physician's opinion over that of an examining physician. *See Wilkinson v. Comm'r of Soc. Sec.*, 289 F. App'x 384 (11th Cir. 2008). Thus, because the ALJ determined that Dr. Clark's opinion was more strongly supported

by the record than Dr. Greenberg's opinion, the ALJ appropriately afforded this opinion substantial weight.

Notably, Plaintiff fails to cite substantial evidence from the record that contradicts the ALJ's findings as to Plaintiff's RFC or the weight the ALJ gave to the opinion evidence. Plaintiff also did not cite any evidence in the record that supports Dr. Greenberg's opinion. Additionally, Plaintiff fails to address the other evidence from the record—in addition to the opinion evidence—that the ALJ noted in support of his RFC findings, including Plaintiff's failure to consistently complain to physicians of the level of disabling symptoms Plaintiff testified to at the hearing and generally alleges, presence of daily activities that are inconsistent with Plaintiff's complaints, absence of abnormal clinical and laboratory findings to support Plaintiff's complaints, a record of several essentially normal clinical findings, conservative and routine treatment, and the well-supported opinions of Dr. Clark and Dr. Henry. (R. 13–14.)

All of this constitutes substantial evidence that supports the ALJ's findings. A mere conclusory allegation that the ALJ improperly rejected opinion evidence or that substantial evidence does not support the ALJ's RFC determination is not sufficient, particularly without a showing that substantial evidence supports Dr. Greenberg's opinion that the ALJ found

to be unsupported by the record and therefore afforded no significant

weight. Accordingly, the Court concludes that the ALJ did not err in

discrediting Dr. Greenberg's opinion and that substantial evidence

supports the ALJ's findings.

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the

decision of the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** on the 8th  day of February 2017.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.